Number 12, 3124, Carmen Guzman-Ewling against the Social Security Administration, Mr. Ritchie. Trouble getting down from Baltimore, did you have? I sure did. Let me apologize for my tardiness. Apparently, I need to spend three hours driving from an elected city to D.C. these days. So, I appreciate your patience. It took me close to that to get up here from Alexandria, so I understand your problem. Anyway, here we are whenever you're ready, Mr. Ritchie. Thank you. Again, good morning. May it please the Court. The matter before you principally concerns whether the arbitrator correctly applied Allen when he denied Ms. Guzman's petition for reasonable attorney fees. I intend to address the following points. First, the arbitrator failed to address whether Ms. Guzman was substantially innocent of the alleged misconduct. And second... He never said she was. I'm sorry? He never said she was. He also never addressed in the appeal whether she was under Allen criteria number two. Right. But I would actually say that in his decision, the arbitrator, in fact, indicated that based on the preponderance of evidence, that the agency's position was not supported, nor was the penalty supported. Isn't it the case that the same arbitrator who wrote the merits decision also wrote the decision on the attorney's fee? That's correct. So he knew the case. Yes, he did. He knew it backwards and forwards. He knew all the pros and cons. Well, theoretically, yes. I mean, he was there for the hearing. Not theoretically. If there's anybody who knew the case, it had to be the arbitrator who decided it. Well, it's possible that one can decide the case and still not fully understand every facet of the case. Oh, I don't want you to say that. Do you want to challenge the merits of his decision? No, I'm not. Oh, you thought he did fine on that. I did. Yes, I did. Okay, well, then let's not taint his decision. He knew the facts of the case. I believe, for the most part, he did, yes. And he concludes that it's not in the interest of justice on these facts to do anything more than what he'd already done for Ms. Guzman. I'll just call her Ms. Guzman for simplification. He concludes that nothing more needs to be done for Ms. Guzman, and you want us to overturn on some sort of arbitrary standard? Yeah, I believe that the arbitrator in this particular situation misapplied Allen. I mean, Allen is multi-faceted, and the Merit Systems Protection Board has created this multi-factor analysis to sort of analyze the petitions. And I think, in this regard, the arbitrator— He didn't understand Allen. I don't think he did. I think he missed a portion of Allen, and a few portions of that— Did he know about Allen? He discussed Allen in his B decision. Yes, he did. And I think, for an example, in Allen Criteria 2, it discusses three different things. It discusses substantially innocent, wholly unfounded, and clearly without merit. In his decision, the arbitrator cites and discusses Allen Criteria 2, but only determines and establishes that, based on the interest of justice, that fees weren't warranted under clearly without merit and wholly unfounded. The arbitrator never discusses whether or not Ms. Guzman was substantially innocent under Allen Criteria 2. It's our argument that he should have done that. Not only that, but he should have, based on his own decision in the merit system. He never said anything about her being innocent. All he said was, in conclusion, the preponderance of the evidence does not support the agency's position and penalty. He never said that, in fact, he infers—actually, he says that she was in violation of a direct order not to get back on the computer. He says she admitted to that. So she was clearly in the wrong, and at least some part of it. But his conclusion is there was no preponderance of the evidence because it was a he-said-she-said kind of situation. That's quite different from being substantially innocent. And so he doesn't have to say, was she substantially innocent, because he'd written the merits decision. Right? I mean, am I misreading it? Help me if I'm misunderstanding the case. Well, I think there is a misunderstanding. And I think what I understand this case to be, and what our point is, is that there are three aspects to Allen. All right? It's not—and each of them are separate. And this court has even stated in Yorkshire v. MSPB that the court has held that substantially innocent, that component of Allen Criteria 2 is an operative guideline in and of itself. I think what happened in the decision on fees is that the arbitrator looks to whether or not bringing the agency decision to suspend Ms. Guzman for 30 days was clearly without merit and or wholly unfounded. We distinguish between those three. Neither of those statements accurately describe what the arbitrator found. And I understand that. But what we're arguing is that substantially innocent is a separate category that has its own proof that's necessary in order to support that. There have been plenty of cases from this court where they have upheld attorney's fees in situations where the fact finder substantiated or sustained some of those charges. In this regard, the arbitrator didn't sustain any charge. Ms. Guzman was suspended for 30 days. She lost pay for 30 days in efforts of $10,000. And then when we went to hearing, a two-day hearing, the arbitrator found that none of the charges were sustained. In fact, rescinded the reprimand, ordered the agency to expunge the records from her file, and ordered them to pay a full back pay. But this is all about what's in the interest of justice, right? I mean, that's something above and beyond being a prevailing party. That's correct. 7701G1 says you have to be a prevailing party. Okay, you got that. But then it also has to be in the interest of justice in order to get attorney's fees. So you can't just tell us that you prevailed. There has to be something extra there. I understand, and I agree with you. I think that we did more than just prevail. I mean, simply a mitigation of one day would have been, in essence, prevailing. She would have been entitled to one day of back pay. She would have felt vindicated in some regard, and that would have been an instance of where she would have been a prevailing party. And I think also in the interest of justice, not entitled to attorney's fees. That's not what happened here. In this regard, the arbitrator found on all four accounts that the agency had no grounds to suspend her. No, no. Say it the way he said it. What he said was there's no preponderance of the evidence that supported the agency's stance. Right. He didn't say anything about no grounds. You're correct. That is right. And, in fact, he did say that while after the second directive, Ms. Guzman did admit to accessing the claim. So she admitted that she had, in fact, been wrong at least once. And you're right, but he also goes on to say that it was so minor, essentially, that it meant very little. And this Court has looked at that. This Court has looked at situations where a fact finder has upheld or sustained charges and analyzed the gravity and the nature of the charges. In Boe's v. Department of the Air Force, this Court states that the substantial aspect of this requirement is met where the employee is innocent of the primary or major charges or of the more important and greater part of the original charges. And I think that's what happened in this situation. We had some major charges. We had alleged misconduct towards a member of the public. We had failure to follow directives. We had an additional charge of failing to follow a directive and alleged untruthfulness, if you will. And in all those except for the one that you mentioned, which is the third charge, which, again, the arbitrator deemed to be a minor infraction, in all of the other charges, he indicated there's no preponderance to support the agency's stance, which essentially vindicated Ms. Guzman from any wrongdoing. And I think that's different than saying that we prevailed. I think that's different what the substantial innocent requirement holds. In Dunn, this Court held that to satisfy a Category 2, an employee must show more than overall victory. Rather, the final result must vindicate the employee as substantially innocent or disclose that the original agency action was wholesomely unfounded or clearly without merit. I think in this situation, it's clear that she was vindicated. Ms. Guzman was charged with four infractions, and the arbitrator did not uphold or sustain any of those charges. But there is something more than being just vindicated. For example, if you go back to the Allen case, it says, when evaluating Allen Factor 2, which is what we're talking about, any such determination should be based on the record established before the Board on the merits of the agency's action without holding a separate hearing on its opinion on this question. In making such a determination, the presiding official should examine the degree of fault on the employee's part and the existence of any reasonable basis for the agency's actions. And so there's other cases like Yorkshire and Massa where what was being evaluated was whether or not there was some manifest injustice to drag this innocent employee through some totally unfounded, unnecessary disciplinary proceeding. And I don't see anything in the arbitrator's decision that's really telling us, the reviewing court, that what happened here to Ms. Guzman rises to that level. That may be right, but I think that's where the arbitrator got it wrong. I think in this situation, we had four infractions. So the first one dealt with alleged misconduct or inappropriate conduct towards a member of the public. Well, during the hearing, plenty of co-workers, plenty of management officials, even Ms. Willis, the claimant, testified. We had supporting documentation, which the agency had at the time that they initiated their decision. And that information, that evidence, was written testimony from the security guards who was witness and present at the time that Ms. Willis was there and that this so-called altercation occurred. We had co-worker testimony supported by written statements, all of which the agency had at their disposal when they underwent their investigation and also when they proposed the suspension, issued the decision. That information was overlooked. And not only overlooked, I think it was completely disregarded with no real reason as to why security testimony, security guard testimony and co-worker testimony was incredible. And I think that is an issue. In addition to that, we have the so-called violation of agency policies. We had two conflicting policies that the agency was fully aware existed at the time that they brought these charges against Ms. Guzman. And they dealt with the way in which you file claims. One was this so-called unofficial policy that was the policy of the office, which is every three days you notify the claimant. On the sixth day you notify the claimant. On the ninth day you notify the claimant. And do your best, wink, wink, and process the claim within 14 days. What does the wink, wink mean? Well, the wink, wink is, hey, we have a policy over here, but this is what we really want to do. And, you know, agencies have deadlines. They have guidelines. They have processes to which they're supposed to follow. And this was one of those things. This was we need to expedite claim filing. And that's what they did with the 369 rule in the 14-day processing. Let me ask you an unfair question. Sure. I find the arbitrator's merits decision, which is implicitly before us, even though the issue is the attorney's fees, we've got to do it in the light of interests of justice, very interesting. He has 20, I'm sorry, he has 11 pages of detailed position by the government. He has three pages of detailed position by the union. And he then has four paragraphs in a page and a half, each paragraph becoming shorter and shorter and shorter. And when he finally concludes, the preponderance of the evidence does not support the agency's position and penalty. Let me ask you this question. It's a little unfair, so you can simply take the fifth if you want to. Let's assume he had said the preponderance of the evidence supports the agency's position and penalty. And you were up here trying to undo that result. Would you have a tough problem? Well, I think it's inherently tough to argue against an arbitrator's decision. So, yes, I would have a tough problem. You'd have a tough problem. Yes. Which suggests to me that the arbitrator probably had a tough problem, too, and he came down, fortunately, on your client's behalf, or I guess the union's behalf, whatever. So I'm struggling with why this case should be such an exception on the question of justice. Maybe if we heard from the government, we'd be enlightened. I'm saving you from having to answer an unfair question. I appreciate that. I'll be back with my rebuttal. Thank you. Okay. Thank you, Mr. Ritchie. Respect. Your Honor, may it please the Court. We believe that the arbitrator's decision should be upheld because it was not in the interest of justice to pay Ms. Guzman-Muelling's attorney's fees. As this Court has noted in some of its questions, it is incorrect to equate success on the merit with awarding attorney fees in the interest of justice. Ms. Guzman-Muelling has not established grounds to overturn the strong deference that is afforded to the arbitrator's decision that it was not in the interest of justice to give her the fees. The other side of the path this discussion has taken is that assuming that it was a closed case and a difficult decision and the arbitrator did come down on Ms. Guzman's side eventually as a matter of discretion and all of the other aspects, doesn't this weigh a bit more heavily on the confidence of the representation that she received and, therefore, that the attorney fees should be compensated? I don't believe so, Your Honor. Your Honor, we cited MASA versus the Department of Defense in our decision, and it cites Thompson versus the Merit Systems Protection Board. And there the Court held that regardless of whether an employee prevails on all or some of the contested charges, the closeness of the evidence is a factor to be considered in determining whether the employee is substantially innocent. I don't really think that the interest of justice weighs on the representation. It is designed to ascertain based on the record, and this is from MASA versus the Department of Defense, based on the record established before the Board, whether an employee is without fault that goes to substantial innocence. But I believe this is all going to whether it's in the interest of justice, not based upon the quality of representation obtained. In this case, Petitioner's Counsel has alleged that the arbitrator did not address, accurately address the Allen factors. And I would just point to the Court to page 2 of the appendix of the Petitioner's original brief. There the arbitrator does state that he went through the Allen factors, examined them, and then stated at number 4 that based on the thorough review of the applicable statute, 5 U.S.C. 7701G, and all testimony and documents related to this case, that he denies the award of attorney's fees. So I think this further supports our argument that based upon the record, it was not clear that it was in the interest of justice to award Ms. Guzman-Newling attorney's fees. Ms. Guzman-Newling contends that she's entitled to fees based on several of the Allen factors. We do not believe that she was substantially innocent. The record establishes that this was a closed case, and the closest the evidence is something that the Court can consider. There was substantial evidence supporting the agency's charges. Certainly, there was, as the Court has examined, problems with the way Ms. Guzman-Newling applied established policy and applied established due process, which is something she should have known as a Social Security employee. Certainly, in looking at the way you were supposed to follow up a claim, the evidence presented before the arbitrator at best suggested this was an informal guideline that was followed by, that was propounded by a technical expert and not any supervisor, and that Ms. Guzman-Newling herself had not followed it in some of the cases. That is discussed at page, I believe, supplemental appendix page 30. Also, and that ties into the remaining three charges. Certainly, there was evidence presented in our supplemental appendix, page 3 through 4, that there were some problems with the timing of her contention of when she, in fact, closed out the case. Likewise, Ms. Guzman-Newling has contended that the agency failed to act in good faith or acted in bad faith, which is a different Allen factor. Here, there's no evidence that the agency brought this action to harass or exert improper pressure upon Ms. Guzman-Newling or committed any kind of gross procedural error. Moreover, with regard to Ms. Guzman-Newling's argument, the agency could or should have known that it would not prevail on the merits. Isn't it true that part of the problem that she found herself caught in was this inconsistent rule and guide as to how quickly to respond to an application for benefits? Isn't that the agency's problem? Well, Your Honor, I don't think it was ever established. It was established at the hearing that was propounded by a technical expert, not a supervisor, who had no authority to create policy. Ms. Guzman-Newling doesn't know what his title is. All she knows is this is what she's been told. Well, she did know that he was a technical expert. I think she knew that he wasn't either her first or her second-line supervisor. I think most employees know who their supervisor is. And she didn't even follow the 369 policy in this case. She met with Ms. Willis on April 14. She didn't send anything on April 17. Ms. Velazquez sent something on the 22nd, and then Ms. Guzman-Newling followed up on the 25th, asking for additional information, and then denied the claim on the 29th, which also was not three days later and didn't follow any of the timelines that she had suggested that she was supposed to follow. Likewise, evidence that was presented before the arbitrator suggested that she had not followed these guidelines in other cases and that there was absolutely no disciplinary backdrop for the failure to, in some cases, require more time because essential evidence needed to be submitted. In terms of the reasonableness of the agency disciplining Ms. Guzman, when did Mr. Lintner and Ms. Velazquez know about the allegedly conflicting 369? I'm not sure it was ever established. It was never established in the record they thought this was a policy. It was shown in the record that Mr. Mould may have sent an email to the technical expert who had encouraged employees to follow this policy, that he had sent an email that may have gone to them and that they may or may not have read. I don't think anyone thought that to the extent this is an unofficial goal for the Social Security Administration to show they cared about claims and to process them quickly. Just to answer my question, is there something in the record or did the arbitrator make a finding that Ms. Velazquez and Mr. Lintner knew about the 369 rule before they brought the disciplinary charge? No, I don't believe that he did, Your Honor. The finding on page 2 of the appendix was that the agency, I believe, had no reason to know of conflicting directives. So, if the court has no further questions, we respectfully request that the court affirm the decision at large. Just a quick question. Yes, Your Honor. Are arbitrator decisions in these types of cases this skimpy when it comes to analysis? Is this kind of par for the course? Yeah, I haven't dealt significantly with this. I believe this is par for the course. I believe they usually have quite a bit of facts and are less substantive in the way of the decision. My understanding is it is typical, but I don't deal with arbitrators. We might start writing opinions like that, just cut and paste from the briefs and then say, you lose. I think that would be fun. So, you're not telling us that we should consider this as possibly an arbitrator's compromise and attempt to reach a reasonably congenial or fair result to everybody, giving her the pain for saying that the suspension was incorrect, but you're still going to have to pay for it? No, Your Honor. I believe that the arbitrator clearly said he had reviewed the applicable factors, had considered everything in the record, and thought that it was not in the interest of justice to award fees to Ms. Guzman-Newland. Although the agency may not have proved its burden by a preponderance of evidence, it can't be said that she was in the interest of justice to pay her fees. Arbitrators certainly know that their decisions are supposed to be reviewed when they're reviewed on the same basis as that of, let's say, an administrative judge. And instead, simply reproducing each side's brief and then saying, all right, you win and you lose, does look as if there was either balancing or complexities, but you're not defending, then, that thought process. Is that right? Your Honor, the primary issue here is the attorney fees decision and whether it was in the interest of justice, based on the record of the board, to give her fees. And I don't believe the record that was before the board supports a ruling that it was in the interest of justice. But it's based on the record of what happened. It's based on the record that was developed before the arbitrator. Precisely, the record of what happened in the course of the disciplinary, what led to the disciplinary proceeding and its justification. It wasn't based on any other record, right? Yes, Your Honor. Okay, any more questions? That was a good answer to the fact that you dodged beautifully. Yes, indeed. Thank you. Mr. Richards, you have a little time. I just want to make a couple of points here. I think that's, when I spoke earlier about possibly the arbitrator entering in his fee petition, that's the one point that I wanted to mention, was that although the arbitrator concluded or determined that the agency was unaware of the two conflicting policies, I think the information on the record and the information that I supported also in the petition's brief, which were the emails from this team leader, so to speak, Mr. Maul. In fact, through the course of, in 2008, in May, November, December, I think also in September, if you look at the back pages of 72 all the way to 75 of the appendix, you'll see that this unofficial policy, if you will, this 369 rule, in addition to the 14-day processing time, it's touted. Not only was it provided to Ms. Guzman, it was provided to her unit, and Mr. Maul also testified that he provided to the first-level supervisor, who was the proposing official, and he also testified that Mr. Lintner may have, and he's certain, well, not certain, but for the most part, he believes that Mr. Lintner as well received this document, these documents, these emails. Mr. Lintner was the deciding official in this case. So we posit that, in fact, the agency knew about these conflicting policies and that the arbitrator, in that respect, may have erred. Okay. Do you have one last word, Mr. Ritchie? In conclusion, we just ask that you find that in the interest of justice, Ms. Guzman was entitled to fees, and please remand the case back for determination of reasonable fees. I'm glad you made it up here. Thank you very much. Okay. Thank you, Mr. Ritchie. We expect the case is taken under submission.